**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**JAYSON ROGERS**, individually and on behalf of all others similarly situated,

*Plaintiff*,

*v.*

**LIFEENERGY, LLC**, a Delaware limited liability company, and **JOHN DOE CORPORATION**,

*Defendants*.

Case No.: 1:20-cv-642

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jayson Rogers ("Rogers" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant LifeEnergy LLC ("LifeEnergy") and John Doe Corporation ("John Doe Corporation") (collectively "Defendants") to: (1) stop their practice of placing calls using "an artificial or prerecorded voice" to the telephones of consumers nationwide without their prior express written consent; and (2) obtain redress for all persons injured by their conduct. Plaintiff Rogers, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Jayson Rogers is a natural person and resident of Cuyahoga County, Ohio.

2. Defendant LifeEnergy is a limited liability company organized and existing under the laws of the State of Delaware.[1] LifeEnergy systemically and continuously conducts business throughout this District, the State of Ohio, and the United States. LifeEnergy is registered to do business in Ohio with the Secretary of State and the Public Utility Commission of Ohio. LifeEnergy can be served through its registered agent, Corporation Service Company, located at 251 Little Falls Drive, Wilmington, Delaware 19808.

3. John Doe Corporation is a vendor or third party acting on behalf of LifeEnergy. The true identity of John Doe Corporation will be revealed during discovery and Plaintiff will amend, or seek leave to amend, the Complaint at that time.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"), which is a federal statute.

5. This Court has personal jurisdiction over Defendants because Defendants solicit significant consumer business in this District, LifeEnergy has entered into contracts in this District, and a significant portion of the unlawful conduct alleged in this Complaint occurred in, and/or was directed, to this District. Specifically, Plaintiff received the prerecorded call at issue on his cellular telephone, in this District.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because LifeEnergy conducts a significant amount of business within this District and because the wrongful conduct

---

[1] Defendant LifeEnergy is a wholly owned subsidiary of LifeEnergy Holdings, LLC. *See* dis.puc.state.oh.us/TiffToPDf/A1001001A18G17B45134F02225.pdf

giving rise to this case occurred in, and/or was directed to, this District. Venue is additionally proper because Plaintiff resides in this District.

## COMMON ALLEGATIONS OF FACT

7. LifeEnergy is a certified supplier in the Ohio Energy Choice Program, offering electricity[2] and natural gas to consumers in Ohio.

8. In recent years, energy suppliers such LifeEnergy as have turned to unsolicited telemarketing as a way to increase their customer base. Widespread telemarketing is a primary method by which LifeEnergy solicits new customers.

9. John Doe Corporation initiated a prerecorded telemarketing call to the cellular telephone numbers of Plaintiff and the Class to promote LifeEnergy in violation of the TCPA. LifeEnergy, or one of LifeEnergy's vendors, hired John Doe Corporation to originate new customers and is liable for its illegal telemarketing conduct.

10. The TCPA prohibits companies, such as LifeEnergy, from placing calls using an artificial or prerecorded voice ("prerecorded calls") when making calls to cellular telephones without first obtaining consent.

11. LifeEnergy has violated, and continues to violate, the TCPA and its implementing regulations by placing, or having placed on its behalf, prerecorded calls to cellular telephone subscribers (a) who have not expressly consented to receiving such calls and/or (b) who have expressly requested ***not*** to receive such calls.

---

[2] On September 30, 2019, LifeEnergy filed an application with the Public Utility Commission of Ohio to stop offering electric service in Ohio. According to its application, "LifeEnergy is ceasing operations because it entered into as [sic] asset sale of its customer contracts with NRG Retail, Inc. on June 7, 2019."
*See* http://dis.puc.state.oh.us/TiffToPDf/A1001001A19J01A92046J00202.pdf.
Effective December 29, 2019, LifeEnergy ceased offering electric services in Ohio.
*See* http://dis.puc.state.oh.us/TiffToPDf/A1001001A19L30B45024I00048.pdf

12. As Congress recognized:

> Many customers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers…. Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.[3]

13. Senator Larry Pressler, one of the original drafters of the TCPA, explained the need for the TCPA by observing that "[u]nlike other communications media, the telephone commands our instan[t] attention. Junk mail can be thrown away. Television commercials can be turned off. The telephone demands to be answered." 137 Cong. Rec. S18785 (daily ed. Nov. 27, 1991) (statement of Sen. Pressler).

14. As explained by the Federal Communications Commission ("FCC")[4], the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

15. Yet, in violation of this rule, Defendants fail to obtain any prior express written consent to place prerecorded calls to consumers' cellular telephone numbers.

16. Consumer complaints about LifeEnergy's invasive and repetitive calls are legion. As a sample, consumers have complained as follows:

- "The scam is being run by Life Energy. If you give them your account number (as seen on you [sic] electric bill), you will be 'slammed,' that is they will change your electric provider to Life Energy. They lie about this, claiming that want to show you your 'savings.'"[5]

---

[3] Pub. L. No. 102-243 § 2(6, 12) (1991), codified at 47 U.S.C. § 227.
[4] The FCC is the federal agency given the administrative authority to interpret and enforce the TCPA. 47 U.S.C. § 227(b)(2).
[5] https://800notes.com/Phone.aspx/1-866-311-9541

- "actually a fishing call from Life Energy out of Texas wanting to switch your energy provider."[6]
- "These calls are actually coming from Lifeenergy LLC,, a licensed electric supplier by the PUC (PA Utility Commission). Regardless of whether they're allowed to make an initial marketing call, the tactics of their robocalls are questionable, specifically, not identifying their company name, and intentionally garbling any customer name."[7]
- "I finally picked up after two calls with no message. They said they were from Life Energy."[8]
- "A rep stated he can save us money on our energy bill. His company, Life Energy is who he is working for. I said that I couldn't talk now but would call back. He said to ask for Miss Lucas. A lot of talk in the background as this is a call center for "scammers."[9]
- "Caller ID indicated Life Energy. Said he was calling regarding our electric bill. Asked him if this was regarding actual bill or rates. He just kept saying its regarding "electric utility" and would not answer question. Life Energy is not our electric provider. So sick of these phony callers pretending to be your electric or gas company."[10]

17. In response to the liability risk associated with the TCPA, numerous commercially available services exist to help companies, such as Defendants, that call others using prerecorded voices, identify cellular subscribers and otherwise ensure that calls are only made to consenting consumers. For instance, companies such as Infutor, Nextmark List, and Contact Center Compliance advertise their ability to instantly identify and flag disconnected telephone numbers from cellular telephone number data lists on a recurring basis (such as weekly or monthly). This type of service can identify disconnected numbers before they are recycled, thereby alerting mobile marketers that any consent associated with those telephone numbers has been terminated.

---

[6] https://800notes.com/Phone.aspx/1-440-209-5683/2
[7] https://800notes.com/Phone.aspx/1-855-314-9868/2
[8] https://800notes.com/Phone.aspx/1-223-456-7890
[9] https://800notes.com/Phone.aspx/1-855-314-9869
[10] https://800notes.com/Phone.aspx/1-330-346-3412

18. Despite the FCC's ruling, the industry guidelines, and the commercial availability of programs that help callers filter out non-consenting numbers, Defendants fail to take the necessary steps to ensure that their prerecorded calls are placed only to consenting recipients.

19. Rather, in an effort to increase revenue and skirt additional costs, Defendants simply ignore the law when contacting individuals via prerecorded calls to their cellular telephones.

20. Indeed, LifeEnergy has been sued at least twice for alleged TCPA violations.[11]

21. LifeEnergy's marketing practices have long been under scrutiny. In 2019, LifeEnergy entered into a settlement with Pennsylvania's Attorney General after it placed illegal calls with pre-recorded messages.[12] Under the settlement, LifeEnergy agreed to stop their unlawful practices and pay civil penalties and costs.[13] Since 2018, LifeEnergy has been under investigation for various compliance failures with regard to marketing practices in Illinois.[14]

22. Defendants know or should know that their prerecorded calls are placed to non-consenting cellular telephone subscribers. Ultimately, Defendants are responsible for verifying telephone number ownership and obtaining consent before placing prerecorded calls to cellular telephone subscribers.

---

[11] *See e.g. Heffelfinger v. LifeEnergy, LLC*, Case No. 5:16-cv-05259 (E.D. Pa. filed Oct.5, 2016); *Lechuga v. LifeEnergy, LLC*, Case No. 1:19-cv-02180 (N.D. Ill. filed March 29, 2019).

[12] *See* Pennsylvania Office Of Attorney General's "Do Not Call Report for Fiscal Year 2018-2019" at Page 7, available at www.reppickett.com/Display/SiteFiles/401/OtherDocuments/2019/DNCReportToLegislature2018-19.pdf

[13] *See* https://www.inquirer.com/business/robocalls-pennsylvania-attorney-general-josh-shapiro-20190625.html

[14] *See Illinois Commerce Commission v. LifeEnergy, LLC*, Docket No. 18-1540 Investigation of Compliance with 83 Ill. Admin. Code 412, Obligations of Retail Electric Suppliers, available at https://www.icc.illinois.gov/docket/P2018-1540

23. Defendants were, and are, aware that their unsolicited prerecorded calls were, and are, unauthorized as they fail to obtain prior express written consent before placing those calls to consumers. Ultimately, consumers are forced to bear the costs of receiving these unsolicited prerecorded calls.

24. By placing the unsolicited prerecorded calls at issue in this Complaint, Defendants caused Plaintiff and the other members of the Class actual harm and cognizable legal injury. This includes the aggravation, nuisance, and invasions of privacy that result from the sending and receipt of such prerecorded calls, a loss of value realized for the monies consumers paid to their carriers for the receipt of such prerecorded calls, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

25. In response to Defendants' unlawful conduct, Plaintiff filed this action seeking (a) an injunction requiring Defendants to cease all unsolicited prerecorded calling activities and, (b) an award of actual or statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

## FACTS SPECIFIC TO PLAINTIFF JAYSON ROGERS

26. Plaintiff Rogers is the registered account owner and regular user of a cellular telephone number 216-xxx-8687.

27. On January 14, 2019 at approximately 6:39 pm, Plaintiff received an unsolicited, pre-recorded phone call on his cellular telephone.

28. The January 14, 2019 call used a pre-recorded voice and stated that John Doe Corporation was calling to offer Plaintiff discounted electricity.

29. Plaintiff pressed "1" to speak with a live person and was connected with one of John Doe Corporation's telephone representatives.

30. John Doe Corporation's phone representative asked Plaintiff for his electricity billing account number and stated that Defendant LifeEnergy would be the supplier.

31. John Doe Corporation's phone representative gave Plaintiff Defendant LifeEnergy's toll-free number, 844-662-1222, as a call back number for any customer service related issues.

32. Plaintiff has never provided prior express written consent to Defendants to receive prerecorded calls to him on the 216-xxx-8687 number.

33. Defendants failed to obtain prior express written consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i) a "clear and conspicuous" disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

34. By placing the prerecorded calls as alleged herein, Defendants have caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the prerecorded call disturbed Plaintiff's use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on Plaintiff's phone.

35. In order to redress these injuries, Plaintiff, on behalf of himself and the other members of the Class, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited prerecorded calls to cellular telephones.

36. On behalf of the Class, Plaintiff seeks an injunction requiring Defendants to cease all unsolicited pre-recorded calling activities and an award of actual or statutory damages to the class members, together with costs and reasonable attorneys' fees.

**LIFEENERGY'S LIABILITY FOR TELEMARKETING CALLS**

37. LifeEnergy is a "person," as defined by 47 U.S.C. § 153(39).

38. The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. § 227(b)(2).

39. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 (1995).

40. In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the TCPA*, CG Docket No. 02-278, FCC 07-232, Declaratory Ruling, ¶ 10 (Jan. 4, 2008) (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

41. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as LifeEnergy may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside

> the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network*, 28 FCC Rcd. 6574, 6588 (¶ 37) (2013) ("May 2013 FCC Ruling") (internal citations omitted).

42. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 (¶ 34).

43. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n.107.

44. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*Id.* at 6592 (¶ 46)

45. LifeEnergy is legally responsible for ensuring that the company that made the calls complied with the TCPA, even if LifeEnergy did not itself make the calls.

46. LifeEnergy knowingly and actively accepted business that originated through the illegal telemarketing calls from the company that made the calls.

47. In fact, LifeEnergy accepted the business from illegal calls from the John Doe Corporation Defendant, even though it had previously received complaints alleging that the third parties working on its behalf were violating the TCPA.

48. Despite these facts, LifeEnergy has continued to fail to monitor the third parties operating on its behalf.

49. By hiring a company to make calls on its behalf, LifeEnergy "manifest[ed] assent to another person … that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

50. Moreover, LifeEnergy maintained interim control over the actions of the party that made the calls.

51. For example, LifeEnergy had absolute control over whether, and under what circumstances, it would accept a customer.

52. Furthermore, LifeEnergy had day-to-day control over the actions of the calling party, including the ability to prohibit it from using a pre-recorded message to contact potential customers of LifeEnergy.

53. Additionally, LifeEnergy restricted the geographic location of the calls made by the company promoting LifeEnergy.

54. LifeEnergy also gave interim instructions to the company that made the calls by providing the volume of calling and contracts it would purchase.

55. Moreover, LifeEnergy instructed the calling party to transfer potential customers over to a third-party verification company that LifeEnergy had hired to complete the sign-up process.

56. In other words, LifeEnergy allows its vendors to bind LifeEnergy in contract following an illegal telemarketing call, such as the one Plaintiff received.

57. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

**CLASS ALLEGATIONS**

58. Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Class:

> **Robocall No Consent Class:** All persons in the United States who from a date four years prior to the filing of the initial complaint to the present: (1) Defendants (or a third person acting on behalf of Defendants) called; (2) on the person's cellular telephone number using an artificial or prerecorded voice; and (3) for whom Defendants lacked prior express consent to call that cellular telephone number at the time the call was made.

59. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest, and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4)

persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

60. Plaintiff anticipates the need to amend the definition of the Class following class discovery, including discovery revealing the manner by which Defendants claim they obtained prior express consent to place artificial and/or pre-recorded voice calls to the Plaintiff.

61. **Numerosity**: The exact number of members within the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants have placed unsolicited calls to hundreds or thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

62. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class in that Plaintiff and the members of the Class sustained damages arising out of Defendants' uniform wrongful conduct, namely their unauthorized telemarketing calls. Plaintiff is a member of the Class defined herein, and if Plaintiff is able to recover for the claims set forth in this Complaint, then the other members of the Class will have a right to recover as well.

63. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions, including class actions under the TCPA and related statutes. Plaintiff has no conflicts with, or interests antagonistic to, those of the Class, and Defendants have no defenses unique to Plaintiff.

64. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any

questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a) Whether LifeEnergy is liable for the conduct of their third-party vendor;

b) Whether John Doe Corporation made calls with a prerecorded message;

c) Whether Defendants' conduct constitutes a violation of the TCPA;

d) Whether Defendants utilized an artificial or prerecorded voice to place calls to members of the Class;

e) Whether members of the Class are entitled to statutory and treble damages based on the willfulness of Defendants' conduct;

f) Whether Defendants obtained prior express consent to contact any class members;

g) Whether Defendants' calls constitute telemarketing or were dual purpose messages; and

h) To the extent Defendants' conduct does not constitute telemarketing, whether Defendants obtained prior express oral consent to contact any class members.

65. **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action. Individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and

provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

66. Adequate notice can be given to the members of the Class directly using information maintained in Defendants' records or through notice by publication.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Robocall No Consent Class)**

67. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

68. Defendants and/or their agents placed unsolicited calls to cellular telephone numbers belonging to Plaintiff and the other members of the Robocall No Consent Class.

69. These calls were made without the prior express written consent of the Plaintiff and the other members of the Robocall No Consent Class to receive such calls.

70. These calls, including those to Plaintiff, utilized an artificial or prerecorded voice.

71. To the extent prior written express consent was required, Defendants failed to obtain prior written express consent that disclosed to the consumer that agreeing to receive pre-recorded calls was not a condition of purchase or use of any goods or service. Neither was oral consent provided.

72. To the extent LifeEnergy's agent, John Doe Corporation, placed the calls at issue, LifeEnergy's agent acted with actual or apparent authority and/or in accordance with a contract between LifeEnergy and its agent, John Doe Corporation. LifeEnergy's agent acted under LifeEnergy's control and for LifeEnergy's benefit and/or with LifeEnergy's knowledge and approval. LifeEnergy controlled its agent and knew about, and received the benefits of, the

agent's calling activities. LifeEnergy ratified the agent's conduct with respect to the placing of such calls.

73. Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(B). As a result of Defendants' conduct, Plaintiff and the other members of the Robocall No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

74. In the event that the Court determines that Defendants' conduct was willfull and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Robocall No Consent Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Jayson Rogers, individually and on behalf of the Class, prays for the following relief:

1. An order certifying this case as a class action on behalf of the Class as defined above; appointing Rogers as the representative of the Class and appointing his attorneys as Class Counsel;

2. An award of actual and statutory damages to be paid into a common fund for the benefit of Plaintiff and the Class;

3. An order declaring that Defendants' actions, as set out above, violate the TCPA;

4. An order requiring Defendants to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

5. An order requiring Defendants to identify any third-party involved in the prerecorded calling as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

6. An injunction requiring Defendants to cease all unsolicited prerecorded calling activities, and otherwise protecting the interests of the Class;

7. An injunction prohibiting Defendants from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

8. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

9. Such further and other relief as the Court deems necessary.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

**JAYSON ROGERS**, individually and on behalf of a Class of similarly situated individuals

Dated: March 26, 2020

By: /s/Adam T. Savett
One of Plaintiff's Attorneys

Adam T. Savett (VA73387)
adam@savettlaw.com
Savett Law Offices LLC
2764 Carole Lane
Allentown PA 18104
Telephone: (610) 621-4550
Facsimile: (610) 978-2970

Attorneys for Plaintiff and the Putative Class